LEVI GUGGENHEIM, ADMINISTRATOR FOR ISAAC MANHEIMER v. LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Railroad Injury—Crossing track.*

A man driving a democrat wagon along a city street tried to cross a railway track at a point where his view of the track before crossing was shut off by standing cars and by sheds, and he was killed by a train that was two hours behind time and came at high speed from a direction opposite to that in which he was looking. Several persons testified that they heard no warning signal. *Held* that the question of liability for his death should go to a jury.

Error to Hillsdale. (Pealer, J.) April 14–15.—Sept. 29.

CASE. Plaintiff brings error. Reversed.

*E. L. Koon* for appellant.

*Millard, Weaver & Weaver, Ashley Pond* and *O. G. Getzen-Danner,* for appellee. One who sues for negli-

gent injury must state in his declaration the material facts relied on as a cause of action : *Batterson v. C. & G. T. Ry. Co.* 49 Mich. 184 ; *Addison v. L. S. & M. S. Ry. Co.* 48 Mich. 155 ; *M. H. & O. R. R. Co. v. Marcott* 41 Mich. 435 ; *F. & P. M. Ry. Co. v. Stark* 38 Mich. 714 ; there is no presumption of negligence against the defendant: it must in all cases be proved, and must appear to have been the efficient and proximate cause of the injury, without contributory fault on the part of the person injured : *Mitchell v. C. & G. T. Ry. Co.* 51 Mich. 236 ; *Brown v. C. & B. St. Ry. Co.* 49 Mich. 153 ; *Henry v. L. S. & M. S. Ry. Co.* 49 Mich. 495 ; *Lewis v. F. & P. M. Ry. Co.* 54 Mich. 55 ; *Pzolla v. M. C. R. R. Co.* 54 Mich. 273 ; negligence cannot be presumed where nothing is done out of the usual course, unless that course is itself improper : *G. R. & I. R. R. Co. v. Judson* 34 Mich. 506 ; *F. & P. M. Ry. Co. v. Stark* 38 Mich. 714 ; *Downey v. Hendrie* 46 Mich. 498 ; a traveler on a highway, when about to pass over a railway crossing, is bound to look and listen for approaching trains, before attempting to cross : *Penn. R. Co. v. Righter* 42 N. J. L. 180 : 2 Am. & Eng. R. Cas. 220 ; *Abbett v. C. M. & St. P. Ry. Co.* 30 Minn. 482 ; *Rogstad v. St. P. & M. Ry. Co.* 31 Minn. 208 ; *Zimmerman v. Han. & St. J. Ry. Co.* 71 Mo. 476 : 2 Am. & Eng. R. R. Cas. 191–201 ; *C. & N. W. Ry. Co. v. Dimick* 96 Ill. 42 ; *St. L. A. & T. H. R. R. Co. v. Manly* 58 Ill. 300 ; *I. C. R. R. Co. v. Goddard* 72 Ill. 568 ; *C. B. & Q. R. R. Co. v. Damerell* 81 Ill. 450 ; *C. & N. W. Ry. Co. v. Hatch* 79 Ill. 137 ; *Wheelwright v. B. & A. R. R. Co.* 135 Mass. 225 : 16 Am. & Eng. R. R. Cas. 315 ; *Wright v. Boston & Me. R. Co.* 129 Mass. 440 : 2 Am. & Eng. R. Cas. 121 ; *Penn. R. Co. v. Beale* 73 Penn. St. 504 : 13 Am. Rep. 753 ; *Hanover R. Co. v. Coyle* 55 Penn. St. 396 ; *Chaffee v. B. & L. R. Cor.* 104 Mass. 108 ; *L. S. & M. S. R. Co. v. Hart* 87 Ill. 529 ; *L. S. & M. S. R. Co. v. Miller* 25 Mich. 274 ; *Gerety v. Phil. W. & B. R. Co.* 81 Penn St. 274 ; *Cent. R. Co. of N. J. v. Feller* 84 Penn. St. 226 ; *Blacker v. N. J. Midland R. Co.* 30 N. J. Eq. 240 ; it will be presumed, under ordinary circumstances, in case of collision, that he did not look or listen, or, if so, that he heedlessly disregarded the knowledge thus obtained : *Brown v. M. & St. P. Ry. Co.* 22 Minn. 165 : 19 Am. Ry. Rep. 299 : Whart. Neg. 382 ; *Penn. R. Co. v. Henderson* 43 Penn. St. 451 ; *C. C. C. & I. R. Co. v. Elliott* 28 Ohio St. 340 ; speed of the train, if greater than allowed by law, does not excuse want

of care by the deceased; *M. C. R. R. Co. v. Campau* 35 Mich. 469; *G. R. & I. R. R. Co. v. Huntley* 38 Mich. 537; but there is no law regulating the rate of speed, and the train may be run at any rate of speed consistent with the safety of passengers: *C. B. & Q. R. R. Co. v. Lee* 68 Ill. 582; *Grows v. Me. C. R. R. Co.* 67 Me. 100: 16 Ry. Rep. 331; *McKonkey v. C. B. & Q. R. Co.* 40 Ia. 205; nor does being behind time excuse: *Toledo W. & W. Ry. Co. v. Jones* 76 Ill. 315; *C. & A. Ry. Co. v. Jacobs* 63 Ill. 179; failure of the engineer to sound the whistle, or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking the ordinary precautions for safety: *Zimmerman v. H. & St. J. R. R. Co.* 71 Mo. 476: 2 Am. & E. R. R. Cas. 191; *R. R. Co. v. Houston* 95 U. S. 702; *Schaefert v. C. M. & St. P. R. R. Co.* 62 Ia. 624; 14 Am. & E. R. R. Cas. 696; *C. & N. W. Ry. Co. v. Dimick* 96 Ill. 42; 2 Am. & E. R. R. Cas. 204–228; *Kelley v. Han. & St. J. R. R. Co.* 75 Mo. 138; 13 Am. & E. R. R. Cas. 638; *M. C. R. R. Co. v. Campau* 35 Mich. 469; *Haas v. G. R. & I. R. R. Co.* 47 Mich. 407; *Grows v. Maine Cent. R. Co.* 67 Me. 100; *Henze v. St. L. & K. C. & N. Ry. Co.* 71 Mo. 636: 2 Am. & Eng. R. R. Cas. 212; *I. C. R. R. Co. v. Godfrey* 71 Ill. 500.

SHERWOOD, J. Union-street, in the city of Hillsdale, runs north and south, and has been used over forty years being one of the principal streets of the city. The defendant's railway track, in passing through the city, crosses this street nearly at right angles, running east and west. The crossing is alleged to be a dangerous one, by reason of the near approach of buildings to the track on each side of the street. On the east side of the street and on the south side of the track, standing partly on defendant's right of way and within eight feet of the track and running parallel with it, was a wood-shed, five or six rods in length. There was a side track south of the main track, extending from the depot west to Union street and about thirty rods beyond, upon which there were standing at the time of the accident complained of five box cars, and still east of these cars and shed were the coal-sheds of the company. Several buildings also stood on the east side of Union street and south of the wood-sheds of the company; and between Main street and the depot, a distance of about forty or fifty rods, were several lumber-yards,

closely approaching the track, and more or less obstructing the view of the approach of passing trains coming from the east. Union street, also, from about thirty feet south of the track, was about three feet lower than the railway track, which ran westward through the city on a down grade to the depot.

This was the situation of the crossing and its surroundings on the 31st day of October, 1879, when Isaac Manheimer, accompanied by his son, a lad about ten years old, attempted with a mule and a democrat wagon to make the crossing from the south on Union street, and while on the track was struck by one of the defendant's passenger trains coming from the east, and instantly killed. The plaintiff is administrator of Manheimer's estate, and as such brings this suit under the statute to recover damages for the alleged negligent killing of the deceased. The cause was tried by jury before Judge Pealer at the Hillsdale circuit, and after hearing the proofs he directed a verdict for the defendant, on the ground that Manheimer was negligent in not observing proper caution in approaching the crossing and track of defendant.

The return to the writ furnishes us with all the evidence and proceedings in the case for review. The direction of the court to the jury raises the important question in the case. If he was right, the other questions presented may well be passed until circumstances shall arise making their consideration necessary.

In determining the question presented by the ruling of the court, it is only important to examine the testimony on the part of the plaintiff, and that which tends to prove his case. There is no question but that the proof shows Manheimer was instantly killed by the defendant's engine at the time and place mentioned in the plaintiff's declaration. Neither is it pretended that the deceased had not the right to cross the track of defendant with the mule and wagon where he made the attempt so to do.

The plaintiff claims four grounds of negligence on the part of the company to prove his case, and that he gave testimony on the trial tending to establish them all. *First*,

the defendant left its cars standing upon the side track in such manner as to obstruct the view of an approaching train from the east by a traveler upon the highway, and provided no watchman or other means of warning persons of such additional danger. *Second,* that the train causing the injury to deceased was not running on time when the injury occurred, and came into the city upon the crossing at an extraordinary and dangerous rate of speed, running twenty-five or thirty miles an hour. *Third,* that no whistle was sounded or bell rung as required by statute, or other warning of the approach of the train. *Fourth,* that the crossing was a dangerous one, and that defendant should have furnished the same with a flagman to warn persons of the danger, and of the approach of passing trains.

The testimony shows, I think, very clearly that the near proximity of the freight cars to the highway greatly obstructed the view of approaching trains from the east, and thereby very much increased the danger in approaching the track upon the highway from the south. While this was the right of the defendant, it must be conceded, I think, that it imposed additional responsibility upon the defendant in adopting means of protection against accidents and danger. The plaintiff's testimony, however, shows no such means were taken, and the usual and ordinary warnings were omitted ; at least it strongly tends to show that such was the fact.

The plaintiff's testimony upon the second ground tends to show that the train passed through the city, and over the Union street crossing, at the rate of twenty-five to forty miles an hour, and one of defendant's witnesses, an engineer and employee of the company, testified that the crossing was a dangerous one, and that the engineer would not exercise ordinary care and prudence in running the train over that crossing at a rate of more than fifteen miles an hour.

Upon the third ground the plaintiff's witnesses, to the number of ten, all testified that they were in hearing distance of the bell and whistle upon the engine as it passed over the track through the city, and in its approach to Union street crossing, they did not hear any whistle blown or bell rung.

Some of them were very near the train, and all think they would have heard these signals if they had been given; and one, at least, who was standing near by and watching the train and looking right at it as it came in and made the crossing swears positively that neither signal was given. Among those who testify upon this subject was the son of the deceased, who says, as he approached the track,

"I looked both ways and did not hear any train or hear any whistle or hear any bell rung."

*Question.* "Your father did the same?"

*Answer.* "Yes, sir; he was looking, and he did not see anything until it struck us."

Upon the fourth point the testimony shows, and tends to show, that Hillsdale is, or was at the time the accident occurred, a city of about 4000 inhabitants; that Union street, where the track of the defendant crossed it, was one of the main traveled thoroughfares of the city, for teams, carriages and pedestrians; that the track, as it approaches the street crossing from the east, for more than a hundred rods comes in on a curve, the train running on the outer side thereof; that in passing north towards the track on the highway nothing of the train is observable coming from the east, except the smoke stack of the engine, for a long distance, and not even that when getting near the track, if cars are upon the siding, until the traveler reaches the crossing; that in order to prevent accident and injury it is necessary, at least when cars are standing upon the siding near the street, that a flagman, or something more than the ordinary means, should be used to advise travelers of the near approach of the defendant's trains, and especially was such the case in this instance, when no train was due from either direction, and the one that did the injury was more than two hours behind time.

Such was the testimony and tendency of the testimony in this case, in behalf of the plaintiff when the evidence was closed.

In many instances this testimony was controverted on the part of the defendant, and very much of it was not seriously

contested; but the question presented is, does it not, standing alone and taken as true, show, or tend strongly to show, that the defendant was negligent in passing the crossing and coming round the curve with its train off of time at the rate of speed that it did, and without giving any of the signals or warnings whatever, required by statute, or otherwise? I think it does; and if that is the correct conclusion, then I apprehend there can be no question but that the case should have been submitted to the jury.

From the testimony above stated it appears that the plaintiff had good reason to believe that no train was approaching, and that he could make the crossing in safety. Certain it was that had the train been slowed down ten seconds he would have passed the fatal spot in safety; and it is almost conclusively to be presumed from the facts stated that had the whistle been sounded or the bell rung for the crossing, the deceased would have heard it, and delayed crossing until he could have done it without injury. The negligence of the defendant, which could not have reasonably been anticipated, should not be allowed to impose a degree of care and diligence upon the deceased unknown to the law and which would not have been required if ordinary attention and prudence had been exercised by defendant.

It must be borne in mind in this discussion that we are not permitted to consider the defendant's testimony, but plaintiff's only, and must give to it the most favorable construction possible for the plaintiff. We are not to look for preponderance of evidence, but whether the plaintiff has any evidence for the defendant's to preponderate over; if he has, then the jury should have been permitted to take the case.

But, aside from all these considerations, under the circumstances of the case as they are presented in this record, I am not prepared to accede to the views of the learned judge who summarily disposed of the facts at the conclusion of the trial, that "there is no evidence in the case that Manheimer exercised his sense of hearing, and the evidence that he exercised his sense of seeing is very slight." The son testifies that he and his father both, as they approached, looked both ways,

but they saw nothing of the train.   Mr. Perry, another witness, says he saw the deceased, as he approached the track, look towards the depot more than once.   This is positive testimony.   The son says he looked and listened for the train, and that his father did the same.   Of course he could only speak of the father's listening from such manifestations as his father gave of that fact, and certainly, sitting right beside him in the wagon, he was in a situation to observe these. The law does not require positive testimony to prove this fact; if it did, it could never have been proved in this case, for the reason the person who alone had positive knowledge upon the subject was instantly killed by the defendant's train.   The law is not so harsh or inconsistent as to require any such injustice, and this Court, in the *Miller Case*, never intended to intimate any such doctrine.   The testimony of the deceased's son is as positive as any testimony well could be in the case upon the subject, and I can see no good reason why it should be set aside or taken from the consideration of the jury.   Taking the testimony introduced on the part of the plaintiff as true, it is difficult to see why it does not show, under the decisions of this Court, and many others, that the deceased was free from any contributory negligence on his part in approaching the crossing.   If the plaintiff's testimony is to be credited, the deceased approached the track at a time when no trains are shown to have been due, over a smooth road, in a single wagon, the mule traveling upon a slow walk.   He listened for the cars when nearing the track, and looked both ways for the train, and not seeing, hearing or expecting any train, he drove along upon the crossing, and, after passing over the side track, upon which the empty cars were standing, and upon the main track, the train came rushing along on a down grade upon him, with steam off, at the rate of twenty-five to forty miles an hour.   The testimony certainly tends to show, and I think strongly, that the deceased exercised the use of his sight and hearing, and ordinary care at least, and especially as no train was then due by the schedule time of the company.   The evidence is quite clear that he directed his attention more to the west than to

the east, that being the direction of the depot; it would be quite natural to expect an engine from that direction rather than from the other.

After a careful examination of the whole case, and a review of the arguments of counsel of the respective parties, I feel very confident that the facts should have been submitted to the jury, and I think a new trial should be granted.

CAMPBELL, J. I think that there was enough testimony to render the case a proper one to go to the jury.

COOLEY, C. J. concurred.