THOMAS S. KINYON, Appellant, v. THE CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, Appellee.

118  349
129  328

118   349
f132   586

118   349
136   112

118   349
142   751

118   349
143   275

Action for Damages: NEGLIGENCE: EVIDENCE OF: WITHDRAWAL FROM
1   JURY.   Where the issues involve the negligence of defendant in
several distinct matters and there is evidence tending to estab-
lish all, it is error to withdraw from the jury all questions of
negligence save one.

Reasonable Care: COMMON LAW RULE: ABROGATION OF.   The
2   common law rule that care, to be reasonable, must be propor-
tionate to the danger to be avoided, is not abrogated by a
statute which provides that the whistle of the engine shall be
sounded "at least sixty rods before the crossing is reached,"
and it is error to instruct in effect that if the statute is com-
plied with the railway company has discharged its full duty.

Same: ALLEGATION OF PETITIONS: APPLICATION OF COMMON LAW RULE.
3   Where the petition alleges that the whistle was not sounded as
required by statute, and that sufficient warning was not given
to enable plaintiff to avoid the accident, the allegations are
broad enough to permit the application of the common law rule
that care to be reasonable must be proportionate to the danger
to be avoided.

Negligence: RATE OF SPEED:   A high rate of speed in the opera-
4   tion of a train does not of itself constitute negligence, but
it may become such at places of extraordinary danger and the
failure of the court to so instruct is error.

Sounding the Whistle: QUESTION FOR THE JURY:   Where there is
5   a conflict in the evidence, the point at which the whistle was
sounded with respect to a crossing, is for the jury to determine.

Contributory Negligence: INSTRUCTION REGARDING.   Negligence
6   of plaintiff which does not in some manner or degree contribute
to the injury of which he complains, will not defeat his re-
covery; and an instruction on this subject which omits that
feature of the rule is erroneous.

Instructions: HOW WRITTEN.   Instructions partly typewritten and
7   partly written with pen or pencil are not objectionable on that
account.

*Appeal from Harrison District Court.—HON. O. D. WHEELER, Judge.*

WEDNESDAY, OCTOBER 29, 1902.

THE opinion states the case.—*Reversed.*

*C. O. Kellogg* for appellant.

*Hubbard, Dawley & Wheeler* and *Thomas Arthur* for appellee.

WEAVER, J.—The plaintiff being the owner of thirty-nine steers, was driving them along the public highway and over a crossing of the defendant's railway track. Before the passage was entirely accomplished, a train moving at a high rate of speed approached the crossing, and a collision occurred, in which six of the steers were killed. The plaintiff alleges that this loss of his property was occasioned by the negligence of the railway company in the following particulars: That the whistle of the engine was not sounded as required by law; that the whistle was not sounded at all on approaching the crossing until within less than 60 rods of the crossing; that the view of approaching trains at the crossing was obstructed by a curve of the road through high banks, surmounted by brush and weeds; that the train was running at a dangerously high rate of speed, which was not slackened until within 30 or 40 rods of the crossing; that at the same time defendant had negligently allowed several cars to stand near the crossing on the side of the main track from which plaintiff was approaching, thus further obstructing the view in the direction of the approaching train; and that by reason of the negligence so charged, and without contributory negligence on his part, his property was injured and destroyed; and he asks a verdict for damages. The defendant denies all

the allegations of the petition. There was a verdict and a judgment for the defendant, and plaintiff appeals.

Upon the trial the ownership of the cattle by plaintiff was conceded, as also that they were killed by collision with defendant's engine at the time and place charged; the only contest remaining being upon the question of defendant's alleged negligence in respect to such accident, and plaintiff's want of contributory negligence. The plaintiff's evidence tended to show that, with the aid of one Jones, he was taking the herd along a highway running near and parallel to the defendant's right of way, and on approaching another road, which crossed the railway at right angles, Jones rode his horse to the front, and turned the cattle in the direction of the railway crossing, while plaintiff followed behind them; that the cattle were moving in a bunch of about 50 feet in length along the path; that Jones went to the railway crossing and looked and listened for approaching trains, and, discovering none, allowed the cattle to cross the track, but before the passage was effected the collision occurred. There was, to say the least, some evidence tending to sustain each of the allegations of negligence set out in the petition. Most of it is denied by defendant's witnesses, but the truth of the dispute was in each instance a matter for the jury.

At the conclusion of the testimony, the plaintiff requested the court to instruct the jury as follows: "(1) You are instructed that a traveler about to approach a railroad, intending to cross at a public crossing, has a right to presume that the whistle of an engine will be sounded, as required by statute, at least sixty rods before arriving at the crossing. So, if you find that in this case the plaintiff and the man Jones looked and listened before crossing the track at the time of the accident, they had a right to rely upon the fact that the whistle would be blown, and they were not obliged to continue looking and listening for the approach of a train. (2) You are instructed that

the testimony in the case shows that the crossing at the place where the accident occurred was a dangerous one, and it was the duty of the engineer in charge of the train which collided with the cattle to have sounded the steam whistle of the engine in sufficient time to have warned plaintiff, approaching the crossing, so that the accident could have been avoided by the use of ordinary care on the part of the plaintiff. (3) You are instructed that the statutes of the state require that the whistle of each locomotive engine must be sounded at least twice, sharply, at least sixty rods before arriving at a public highway crossing over the railroad at grade; but at a dangerous crossing, such as the one in controversy, if the train should be running at a high rate of speed, whistle should be sounded at a greater distance, if it is necessary to do so in order to warn travelers about to cross the track at said crossing." These requests were refused. In the instructions given upon its own motion, the court, in effect, withdrew from the consideration of the jury all allegations of negligence, except the one based upon the alleged failure of the defendant to sound the warning signal at least sixty rods from the crossing. Of these instructions, it is necessary to set out only the following: "(2) It is claimed by the plaintiff that the defendant's agents and employes were negligent in failing to sound the necessary warning by whistle when approaching the crossing in question, and that by reason of such failure the cattle in suit were run upon and killed. This is the only particular wherein plaintiff claims that the defendant was negligent, and will be the only one considered by you in your determination of the case." "(4) It must appear from the evidence that the defendant, in operating the train in question, was negligent in failing to sound the whistle as required by law in approaching said crossing. This is the matter wherein plaintiff claims defendant was negligent. The statutes of this state, among other things, provide: 'A

bell and a steam whistle shall be placed on each locomotive engine operated on any railway, which whistle shall be twice sharply sounded at least sixty rods before a road crossing is reached,' etc, 'and the company shall be liable for all damages which shall be sustained by any person by reason of such neglect.' If it appears from the evidence, by the greater weight thereof, that at the time the accident in question, in which plaintiff's said cattle were killed, the employes of defendant in charge of the engine hauling said train failed to twice sharply sound the whistle on said engine at least sixty rods before reaching said crossing, such failure on the part of such employes would be sufficient to constitute negligence in the operation of said train on the approach of said crossing. But unless it appears from the evidence, under the rules above given, that said employes of the defendant did fail to sharply sound said whistle twice at least sixty rods before reaching said crossing, then the plaintiff cannot recover. Whether said employes did sound said whistle, at least sixty rods before approaching said crossing, twice, sharply, as above required, is a question of fact to be determined by you from all the testimony before you throwing light thereon. This is one of the main questions of fact to be decided by you, and should be the first one decided by you when you begin the consideration of the case." "(8) If you find from the evidence that plaintiff or said Jones heard the approaching train when it was sixty rods or more north of said crossing, then the failure to sound the whistle, if any such there was, did not cause or contribute to such accident, and you should find for the defendant. (8½) There is some testimony before you showing that the plaintiff did not stop said cattle, or cause the same to be stopped, until he could ascertain whether or not a train was approaching. He is required to use ordinary care and caution,—such care and caution as an ordinarily prudent man

would use under like circumstances,—and, if such care
and caution would require that he stop said cattle to inves-
tigate, then failure to do so would constitute negligence
upon his part, and he cannot recover. But unless ordin-
ary care and caution, under the facts of this case, would
require that he take such step, and stop said cattle for
such purpose, he would not be negligent in failing to do so."

I.    There was error in withdrawing from the jury all
question of defendant's negligence, other than the alleged
failure of the trainmen to signal for the crossing. The
negligence charged in the petition is not pred-
icated alone upon the naked failure to sound
the whistle at least sixty rods from the cross-

1. NEGLIGENCE: evidence of: withdrawal from jury.

ing, but upon that fact taken in connection with the high
rate of speed at which the train is claimed to have ap-
proached, and the obstructions by which the view of the
track in the direction of the train was limited or obscured.
Plaintiff was entitled to go to the jury upon every fact
alleged in his petition and denied by the answer, so far,
at least, as evidence had been produced tending to sustain
them; and, as we have already said, there was testimony
proper to be considered upon each of the several allega-
tions of negligence. It is very possible that proof of any
one of the matters charged would not have been sufficient
to justify a finding of negligence against the defendant,
and yet, when considered together, they may be ample to
sustain such a verdict. For instance, it is a settled doc-
trine in this state that the movement of a train at a very
high rate of speed is not in itself negligence (*McKonkey v.
Railroad Co.*, 40 Iowa, 205; *Cahoon v. Railway Co.*, 90
Iowa, 174); but it has never been held that a high rate of
speed may not, under some circumstances, become negli-
gence. In *Artz v. Railroad Co.*, 44 Iowa, 285, discussing
the effect of an instruction that "the rate of speed, though
not regulated by law, may be considered with other facts
tending to establish negligence," we said: "While a rail-

way is not restricted by law to any rate of speed, unusual speed at crossings or at other places where men or brutes may be exposed to danger from passing trains may be considered, in connection with other matters,—as the failure to give signals of the approach of the train, and the like,—to determine the want of care on the part of those operating it. This rule has always been recognized in this state." It would be difficult to conceive a case coming more clearly within this rule .than the one sought to be proved by the plaintiff in the present instance. He alleges and offers evidence to show that the train was running very rapidly, and that the place was one of more than ordinary danger, by reason of the curve in the track, the high banks, the cars upon the side track, and the failure to give proper signals of the approach of the train. All these matters, then, were material in determining whether there was any want of reasonable care by the defendant, as charged, and should have been submitted to the jury with appropriate instructions.

II. The tenor and effect of the instructions given were to impress upon the jury the thought that, if the whistle of the engine was sounded sixty rods from the crossing, the defendant had discharged its whole duty. This idea was expressly or impliedly repeated in various forms throughout the charge. There are a few cases which tend to sustain the doctrine announced by the learned trial court in this respect (*Beisiegel v. Railroad Co.*, 40 N. Y. 9; *Grippin v. Same*, 40 N. Y. 34); but, as we shall endeavor to show, it is not in accordance with the weight of authority. Even when there is no statutory regulation, a railway company may be chargeable with negligence for failing to give reasonable warning before running its train over a public crossing. Shearman & Redfield, Negligence, section 484; *Artz v. Railroad Co.*, 34 Iowa, 158; *Railroad Co. v. Ives*, 144 U. S. 408 (12 Sup. Ct. Rep. 679, 36 L. Ed. 485);

2. REASONABLE care: common law rule: abrogation of.

*Tolman v. Railroad Co.*, 98 N. Y. 198 (50 Am. Rep. 649); *Loucks v. Railway Co.*, 31 Minn. 526 (18 N. W. Rep. 651); *Guggenheim v. Railroad Co.*, 57 Mich. 488 (24 N. W. Rep. 827); *Thompson v. Railroad Co.*, 110 N. Y. 636 (17 N. E. Rep. 690); *Harty v. Railroad Co.*, 42 N. Y. 468. And in such cases the place where and the distance at which reasonable care requires the warning to be given, must, of necessity, depend upon circumstances. It is a matter of common observation that railway crossings are not all equally dangerous; varying, as they do, from the intersection of straight tracks upon the open prairie, with unobstructed view for miles in every direction, to the crossing of sharply curved tracks in deep cuts, where an extended view is impossible. It is obvious that, taking one extreme, it is hardly possible for a traveler upon the highway to collide with a passing train without gross negligence upon his own part, while in the other case he may quite readily be run down and injured when in the exercise of all reasonable care for his own safety. The general common law rule that care, to be reasonable, must be proportioned to the danger to be avoided, applies here, as in other cases of alleged negligence; and that rule affects not only the traveler who ventures upon the crossing, but the railway company which operates its trains over the track.

Turning to the statute, we find the provision to be that the whistle of the engine shall be sounded "at least sixty rods before a crossing is reached." The effect of this is to indicate the kind of warning which must be given, and the minimum limit within which the duty must be performed, but does not abrogate the common-law obligation which would require a warning at a greater distance if by reason of the speed of the train, or the peculiar dangers of the crossing, some earlier signal is dictated by reasonable caution. 1 Rorer, Railroads, 529; *Railroad Co. v. Hague*, 54 Kan. 284 (38 Pac. Rep. 257, 45 Am. St. Rep. 278); *Richardson v. Railroad Co.*, 45 N. Y. 846; *Eaton v. Railroad*

*Co.*, 129 Mass. 364; *Barry v. Railroad Co.*, 92 N. Y. 289 (44 Am. St. Rep. 377); *Bradley v. Railroad Co.*, 2 Cush. 539; *English v. Southern Pac. Co.*, 13 Utah, 407 (45 Pac. Rep. 47, 35 L. R. A 155, 57 Am. St. Rep. 772). In other words, the warning must be timely, and timeliness depends upon the facts and circumstances of each case. *Eskridge's Ex'rs v. Railway Co.*, (Ky.) 12 S. W. Rep. 580); *Railroad Co. v. Stinger*, 78 Pa. 219. In the case of *Hart v. Railroad Co.*, 56 Iowa, 170, we said the doctrine that "mere compliance with statutory requirements will not absolve the railroad corporations from any duties which they were under before, or excuse them from taking other reasonable precautionary measures when their trains are crossing or about to cross a highway, is well settled. In case of collision, it is for the jury to say whether such measures have been adopted, and whether, under the circumstances of the case, the railroad company has used reasonable care to prevent it." This precedent is authoritative, and commends itself to our judgment as announcing a just and salutary rule of law, in the light of which the restriction placed by the trial court upon the right of plaintiff to recover must be regarded as error. Appellee's contention that plaintiff's petition is not broad enough to call for an application of this principle of law is not well

3. ALLEGA-TIONS of petition: application of common law rule. founded. The allegation made in this respect is that the plaintiff received no "notice or warning of the approach of the train at said time and place until said engine was almost to the crossing; * * * that defendant carelessly failed and neglected to sound the whistle of said engine as required by section 2072 of the Code of Iowa, and did not sound the whistle at all in approaching said crossing at said time until within less than sixty rods," etc. It is again alleged that "the said cattle were so killed or injured by reason of the carelessness of defendant in not giving or causing to be given to plaintiff or to said Jones, sufficient warning of the

approach of said engine and train as aforesaid in time so that plaintiff or said Jones, or both of them, by the use of ordinary care and diligence, could have driven said cattle from the crossing before its arrival, and in time to avoid said accident, and by reason of the carelessness and negligence of the defendant in not sounding the whistle of said engine as required by law," etc. This is not, as counsel seem to think, a simple charge that the engineer failed to sound the whistle sixty rods from the crossing, but it goes farther, and charges a negligent failure to sound it in reasonable time to give the necessary notice or warning of the approach of the train.

III. Appellee justifies the refusal of the court to admit evidence as to the speed of the train, and to instruct the jury upon the question of speed, as related to the charge of negligence, on the principle we have already recognized,—that no rate of speed is in itself negligence, and because it is said such

4. RATE of speed: when negligence.

claim was waived on the trial. This latter idea is based on the fact that when plaintiff offered to prove the speed of the train, and objection was made thereto, the following colloquy occurred between court and counsel: "By the Court: Wherein do you claim it is material, Mr. Kellogg? By Mr. Kellogg, Attorney for Plaintiff: We allege here that it was negligence for the railway company to operate its train at a high rate of speed at a place where they knew it was dangerous, without sounding or causing to be sounded the whistle of the engine before arriving at the crossing a sufficient length of time to warn people who were approaching there to get out of danger. This is the object of this,—that it was incumbent upon them to sound the whistle. Court: The statute fixes that, without any question of speed, doesn't it? Kellogg: I think it does." This, it is said, is a concession that the rate of speed is immaterial, so long as the whistle is sounded sixty rods from the crossing. We do not so construe it. Counsel for

plaintiff stated with clearness his claim that, where the
company knows that a crossing is dangerous, it is negligent
to operate its train over such crossing at a high rate of
speed without giving reasonably sufficient warning to per-
sons traveling the highway, and, in pursuance of that claim,
offered one or more instructions asking that the jury be so
charged.   It is unnecessary to repeat the proposition as to
the absence of any presumption of negligence from the
mere fact of the great speed at which a train is operated.
The reasonableness of that rule is apparent.   The great
purpose to be subserved by railroads is promptness, speed,
and dispatch in carrying passengers and freight; and under
ordinary circumstances, in the open country, there is no
duty resting upon the companies to slacken the pace of
their trains at crossings.   To hold otherwise, so long, at
least, as grade crossings are the rule instead of the except-
ion, would be to neutralize and to a great extent destroy
the advantages derived from modern facilities for trans-
portation.   But the right thus conceded is not without its
attendant obligations, and if by reason of natural or arti-
ficial obstructions to the view of the traveler upon the
highway, or of the course of the track around curves or
through high embankments, the crossing is of peculiar or
extraordinary danger, the operation of the railway must
be conducted with reference to that fact.   *Artz v. Rail-
road Co.*, 44 Iowa, 285; *Hart v. Railroad Co.*, 56 Iowa,
172; *Courson v. Railway Co.*, 71 Iowa, 29; *Freeman v.
Railway Co.*, 74 Mich. 86 (41 N. W. Rep. 872, 3 L. R. A.
594); *Railroad Co. v. Brandtmaier*, 113 Pa. 610 (6 Atl.
Rep. 238 ); *Czech v. Railway Co.*, 68 Minn. 38 (70 N. W.
Rep. 791, 38 L. R. A. 302, 64 Am. St. Rep. 452); *Ellis v.
Railroad Co.*, 138 Pa. 506 (21 Atl. Rep. 140, 21 Am. St.
Rep. 914); *Childs v. Railroad Co.*, 150 Pa. 73 (24 Atl.
Rep. 341); *Railroad Co. v. Dillon*, 123 Ill. 570 (15 N. E.
Rep. 181, 5 Am. St. Rep. 559); *Shaber v. Railway Co.*,
28 Minn. 103 (9 N. W. Rep. 575).   In *Railroad Co. v.*

*Barnett*, 59 Pa. 259 (98 Am. Dec. 346), the court says:
"It is clearly the duty of a railroad company, as it is of a
natural person, to exercise its rights with a considerate
and prudent regard for the rights and safety of others; and,
for injuries occasioned by negligence, both are responsible.
Nor is it any excuse or justification that the act occasion-
ing the injury was in itself lawful, or that it was done in
the exercise of a lawful right, if the injury arose from the
negligent manner in which the injury was done." This
language was quoted approvingly by us in *Hart v. Railroad
Co., supra.* Bearing in the same direction is the language
of the supreme court of the United States: "The terms
'ordinary care,' 'reasonable prudence,' and such like terms,
as applied to the conduct and affairs of men, have a rela-
tive significance, and cannot be arbitrarily defined. What
may be deemed ordinary care in one case may under dif-
ferent surroundings and circumstance be gross negligence.
The policy of the law has relegated the determination of
such questions to the jury, under proper instructions from
the court. It is their province to note the special circum-
stances and surroundings of each particular case, and say
whether the conduct of the parties in that case was such
as would be expected of reasonably prudent men under a
similar state of affairs." *Railway Co. v. Ives,* 144 U. S.
408 (12 Sup. Ct. Rep. 679, 36 L. Ed. 485). In the *Childs
Case,* above cited, the Pennsylvania court says: "The
movement of trains must be regulated by railroad com-
panies in the exercise of business discretion, and upon con-
sideration of the competition they have to encounter, and
the necessities of modern business. We do not think a
jury may fix the maximum rate of speed at which a train
may be moved in the open country, or that a high rate of
speed is negligence *per se.* But while railroad companies
may move their trains at such rate of speed as the charac-
ter of their machinery may make practicable, they must
not forget that increased speed for the train means

increased danger to those who must cross the tracks, and that increased care on their part to guard against accidents becomes a duty." The soundness of the principle announced by these authorities is beyond question, and the failure of the trial court to observe it in instructing the jury could not have been otherwise than prejudicial to the plaintiff. As a rule, instructions offered by counsel are not so framed that the court is justified in giving them literally as asked, but, if the main thought sought to be expressed contains a pertinent legal principle which is not already fully covered by other instructions given, the court should embody it in proper words in its own charge. Thus it may be said of the instructions asked by plaintiff in the present case that they are perhaps objectionable in form, and assume certain controverted facts as established, but they did present a phase of the law in harmony with the conclusions we have herein announced, which should have had recognition by this court.

For like reasons, there was error in the eighth instruction, whereby the jury were told that, if plaintiff heard the train when it was sixty rods from the crossing, there could be no recovery. The mere fact that he may have heard the train when sixty rods away will not of itself justify the court in saying, as a matter of law, that there was no negligence on the defendant's part, or that there was contributory negligence on the plaintiff's part; but the jury should have been permitted to consider it in connection with and in the light of all the other circumstances alleged in the pleadings and shown by the testimony. In determining questions of negligence and contributory negligence, the jury must "consider all the facts and circumstances bearing upon the question, and not select one particular prominent fact or circumstance as controlling the case, to the exclusion of all others." *Railroad Co. v. Ives, supra*; *Cooper*

*v. Railway Co.*, 66 Mich. 261 (33 N. W. Rep. 306, 11 Am.
St. Rep. 482); *Railroad Co. v. Kane*, 69 Md. 11 (13 Atl.
Rep. 387, 9 Am. St. Rep. 387).

IV.  The appellee argues that as defendant's evidence
shows the whistle was sounded at the sixty-rod limit, and
plaintiff and his witnesses claim not to have heard it, then

5. SOUNDING of whistle: question for jury.

to have given the signal at a further distance
from the crossing would have been useless;
for, if not heard at the lesser distance, it
would not have been any more effectual at the greater.
This requires us to assume that the defendant's witness s
are right, and the plaintiff's witnesses are wrong, which
we cannot do.  The plaintiff and several other witnesses
swear positively that the whistle was not sounded until the
cattle alarm was given within thirty or forty rods of the
crossing, and, alt iough the trainmen and others who ought
to know, testify to the contrary, it remains a q estion for
the jury to determine.  *Railroad Co. v. Lane*, 33 Kan.
702 (7 Pac. Rep. 587); *Roberts v. Railway, Co.* 35 Wis.
679; *Hughes v. Railway Co.*, 88 Iowa, 404; *Moore v. Railroad Co.*, 102 Iowa, 599.

V.  The instruction marked "8½" is objectionable in
so far as it states to the jury that there is "evidence showing plaintiff did not stop the cattle" before going upon the

6. CONTRIBUTORY negligence: instruction regarding.

crossing, as it was the exclusive province of
the jury to find what was shown or established
by such evidence.  It is also defective in its
statement that, if reasonable. care required
that he stop the herd at that point, "then a failure to
do so would constitute negligence upon plaintiff's part,
and he cannot recover."  In order to defeat plaintiff's
right to recover on the ground of his own negligence in this
or any other respect, the jury should further find that such
negligence in some manner or degree contributed to the
injury of which he complains.  That essential element

being omitted from the instruction — inadvertently, no doubt—makes the proposition there stated misleading.

The further objection made by appellant that this instruction was given to the jury in writing, while the remainder of charge was printed upon a typewriter, we think, without merit. It is a matter of everyday occurrence in the trial courts that, after instructions have been put in form upon the typewriter, errors and omissions are discovered, and proper corrections are made in writing with pencil or pen; and it requires considerable ingenuity to discover any prejudice arising from it, unless it be to the patience of the jury in deciphering the manuscript additions.

*7. INSTRUC-TIONS: how written.*

Other questions argued are more or less directly governed by the conclusions we have announced, and need not be further considered.

The judgment of the district court is REVERSED.