# Seifred *v.* Pennsylvania Railroad Company, Appellant.

| 206 | 399 |
| e 24 SC | ⁰477 |
| 206 | 399 |
| d 27 SC | ³116 |
| 206 | 399 |
| 213 | ⁴376 |

*Appeals—Assignments of error—Practice, Supreme Court.*

It is improper practice on appeal to raise the same question by several different assignments of error.

*Negligence—Evidence—Opinion of witnesses—Grade crossing.*

In an action against a railroad company to recover damages for personal injuries sustained at a grade crossing it is error to admit the opinion of witnesses to show that the crossing was dangerous, where the facts disclosed by the evidence give an intelligent description of the situation. In such a case the jury have before them all that is necessary to enable them to form an opinion themselves as to the character of the crossing.

*Negligence—Railroads—Grade crossing—Duty as to flagman.*

On running its trains over a crossing, a railroad company must exercise the care required by all the circumstances, and the failure to perform this duty is negligence. It must adopt and use some means for the protection of those who may be crossing its tracks at their intersection with a public highway. But what particular means shall be used to protect the public when using the crossing with due care is left to the railroad company which operates the road, the law merely demanding and requiring reasonable care in view of all the circumstances.

It is not negligence per se for a railroad company not to guard a crossing with a flagman or watchman. It is only one of the elements to be considered with others in determining whether the company is negligent.

*Negligence—Damages—Carlisle tables.*

In an accident case where the Carlisle tables are admitted to show the expectancy of life of the plaintiff, the court must carefully guard the effect of the evidence by directing the attention of the jury to the circumstances affecting the duration of the life in question. It is not sufficient to say that the tables are some aid, but not conclusive in determining the probable life of the plaintiff. All the circumstances affecting the probable duration of the plaintiff's life as disclosed by the evidence or concerning which there is testimony, should be called to the attention of the jury.

*Negligence—Railroads—" Stop, look and listen "—Grade crossing.*

In an action against a railroad company to recover damages for personal injuries sustained while plaintiff was driving over a grade crossing, the plaintiff testified that he stopped at a point between sixty and seventy feet from the track, and that this point " was the best place I could get to look through." The view eastward from which the train approached was somewhat obstructed, but he said that at that point there was an open space of sixty feet through which he could see in an easterly direction the railroad tracks. He testified, " I looked out through

there, and there was nothing to be seen ahead of me, and I thought I could drive across." He had passed safely over two tracks and his horse went beyond the third track when his vehicle was struck and he was injured. *Held* that the question of plaintiff's contributory negligence was for the jury.

*Practice, C. P.—Points for charge—Several propositions.*

A point for charge containing several propositions of law, some good, and others clearly not, is properly refused. A point should contain but a single legal proposition and be so constructed that the trial court can answer it by a simple affirmation or negation.

Argued May 11, 1903. Appeal, No. 268, Jan. T., 1902, by defendant, from judgment of C. P. Snyder Co., June T., 1901, No. 106, on verdict for plaintiff in case of William P. Seifred *v.* Pennsylvania Railroad Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McCLURE, P. J.

The opinion of the Supreme Court sufficiently states the case.

Verdict and judgment for plaintiff for $5,433. Defendant appealed.

*Errors assigned* were various rulings on evidence and various instructions.

*Andrew A. Leiser*, for appellant.—Opinions are never received if all the facts can be ascertained and made intelligible to the jury, or if they are such as men in general are capable of comprehending and understanding: Graham v. Pa. Co., 139 Pa. 149; Woeckner v. Motor Co., 187 Pa. 206; King v. Missouri Pacific Ry. Co., 98 Mo. 235 (11 S. W. Repr. 563); Closser v. Washington Twp., 11 Pa. Superior Ct. 112; McNerney v. Reading City, 150 Pa. 611–616; Dooner v. Canal Co., 164 Pa. 17; Platz v. McKean Twp., 178 Pa. 601; Cookson v. Ry. Co., 179 Pa. 184; and it is reaffirmed and emphasized in Auberle v. McKeesport, 179 Pa. 321.

Absence of gates and flagman is not per se negligence : Collins v. Leafly, 124 Pa. 203; Phila. & Reading R. R. Co. v. Killips, 88 Pa. 405.

The instructions as to the life tables were insufficient: Stein-

brunner v. Pittsburg, etc., Ry. Co., 146 Pa. 504 ; Campbell v. York, 172 Pa. 205 ; Kerrigan v. Penna. R. R. Co., 194 Pa. 98 ; McKenna v. Citizens' Nat. Gas Co., 198 Pa. 31.

Plaintiff was guilty of contributory negligence : Marland v. R. R. Co., 123 Pa. 487 ; Moore v. P. W. & B. R. R. Co., 108 Pa. 349 ; Penna. R. R. Co. v. Bell, 122 Pa. 58.

*C. P. Ulrich* and *A. W. Potter*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, June 2, 1903 :

It is not the number of exceptions taken during the trial nor the number of assignments of error filed in this court that determines the importance of the cause or the merits of the appeal when the case reaches the appellate court. This suggestion has been made so often by this court that its repetition would seem useless were it not that occasionally counsel still seem to think it necessary to raise the same question by several different assignments of error. Here we have seven assignments which raise but the single question of the competency of a witness to express an opinion as to the dangerous character of the crossing where the accident occurred. A like observation may be made as to the other assignments, and it is safe to say that of the thirty assignments of error filed in this case, one fifth of the number would have been adequate to raise all the questions presented by this record for our consideration. We make these suggestions with the hope that we may be relieved from an examination of an unnecessarily voluminous record, such as we have before us, should the next trial of this cause be followed by an appeal.

We think it was error to admit the opinion of witnesses to show that the crossing where the collision occurred was dangerous. The competency of such testimony is based upon necessity. Where facts disclosed by the evidence give an adequate and intelligent description of the situation, opinion evidence is not admissible. Here there can be no difficulty in placing before the jury by proper evidence the exact situation of the crossing and its approaches so that the jury will be enabled to determine with equal correctness as the witness the character of the crossing. The testimony produced on the trial shows the number of tracks, the manner in which they cross the

highway, the frequency with which and the purpose for which they were used by the railroad, the cars standing on the track at the time of the accident, the buildings, trees, etc., along the approaches which obstruct the view of an approaching train ; in a word, every fact which a juror could know by personal inspection of the premises and which would qualify him to testify as a witness. The jury therefore would have the same information and knowledge of the situation and be as competent and capable of forming an opinion as to the dangerous character of the crossing as any witness who might be called to the stand. No special knowledge or training was necessary to qualify a witness or juror to determine whether the crossing was dangerous or not, and a full and adequate description of the circumstances and situation having been given by the witnesses there was no necessity for opinion evidence on the subject and its admission was error.

The learned trial judge charged, inter alia, as follows : " If this crossing was not a more than ordinarily dangerous crossing, then the sounding of the bell and blowing of the whistle was sufficient notice, and the company would not be to blame for not having a watchman or flagman at that point ; and if the whistle was blown and the bell was rung as the engine approached the crossing, they have done their full duty at this point, if you find in addition that it was not a dangerous crossing." This was clearly misleading and erroneous and was not cured by any other part of the charge. In effect, the court said to the jury, if the crossing was dangerous it was negligence per se for the company not to guard it with a flagman or watchman. As suggested by counsel, all railroad crossings are more or less dangerous and are so regarded. The jury therefore was told by the court that the failure to furnish a flagman or watchman at the place of the accident was negligence. The learned judge may not have intended to say this to the jury but such was clearly the effect of that part of the charge just quoted. On running its trains over a crossing, a railroad company must exercise the care required by all the circumstances, and the failure to perform this duty is negligence. It must adopt and use some means for the protection of those who may be crossing its tracks at their intersection with a public highway. But what particular means shall be used to protect the public

when using the crossing with due care is left to the railroad company which operates the road, the law merely demanding and requiring reasonable care in view of all the circumstances. Says CLARK, J., in Lehigh Valley Railroad Company v. Brandt-maier, 113 Pa. 610 : " The law does not designate the mode in which these precautions against injury on part of the company (at crossings) are to be exercised ; there is, it may be conceded, no common-law duty on part of the company to station flagmen, or to maintain gates, at public grade crossings, unless indeed, under the particular circumstances, the public safety cannot otherwise be reasonably secured; but the fact that flagmen are not stationed at such a crossing, and that gates are not there maintained, are matters proper to be considered, with other facts, in a given case, in determining the rate of speed which is reasonably consistent with the public safety." The twelfth and thirteenth assignments of error must be sustained.

From the charge and his answer to points we are satisfied that the learned trial judge intended to instruct the jury that compensation was the measure of damages. Some of the language used in the charge on the subject may be open to criticism but if so, on another trial, this fault may be avoided. The rule as to the measure of damages in cases of this character is so well established by a long line of decisions that it need not be repeated here.

Having admitted the Carlisle tables to show the expectancy of life of the plaintiff, the learned trial judge should have more carefully guarded the effect of the evidence by directing the attention of the jury to the circumstances affecting the duration of the life in question. As said in Steinbrunner v. Pittsburg, etc., Railway Company, 146 Pa. 504: " Their value, where applied to a particular case, will depend very much upon other matters, such as the state of health of the person, his habits of life, his social surroundings, and other circumstances which might be mentioned." It is not sufficient to say, as the court did, that the tables were some aid but not conclusive in determining the probable life of the plaintiff. All the circumstances affecting the probable duration of the plaintiff's life as disclosed by the evidence or concerning which there was testimony, should have been called to the attention of the jury. Unless

this is done, and in a very pointed and direct way by the court, mortality tables are very likely to have more weight with the jury than should be given evidence of that character.

Under the evidence, the plaintiff's negligence, like that of the defendant's, was a question for the jury. He did not drive recklessly nor carelessly in front of a moving locomotive, if his evidence is believed. Carroll v. Penna. R. R. Co., 12 W. N. C. 348, and kindred cases therefore are not applicable to the facts disclosed by the evidence in this case. The jury would have been justified in finding that the plaintiff did what the law exacted of him and stopped, looked and listened for an approaching train before he attempted to cross the defendant company's tracks. He testified that the point at which he stopped was between sixty and seventy feet from the track and "was the best place I could get to look through." The view eastward from which the train approached was somewhat obstructed, but he says that at that point there was an open space of sixty feet through which he could see in an easterly direction the railroad tracks. "I looked out through there" he says, "and there was nothing to be seen ahead of me, and I thought I could drive across." He had passed safely over two tracks and his horse was beyond the third track when his vehicle was struck and he was injured. The facts thus disclosed were sufficient to send the case to the jury on the question of the plaintiff's negligence. It was argued by counsel for the appellant that it "is conclusively shown by the fact of the collision itself and by the testimony of disinterested eyewitnesses that Seifred did not, in truth, stop at all;" and the appellant's testimony to sustain the argument is quoted at length in the printed belief. But this argument, like the testimony, was for the jury and not for this court. There was testimony introduced by the plaintiff, if believed, to warrant a finding that he did stop, look and listen at a place where he could see an approaching train. The fact that the view in the direction in which he looked was not entirely unobstructed does not convict him of stopping in the wrong place. There he could see, and it was his duty to stop at that point and to use the opportunity thus given him to prevent a collision by looking and listening for an approaching train. This he did.

The defendant's counsel embodied in some of his requests

for instruction several propositions of law, some good and others clearly not. The learned trial judge was therefore right in refusing them. A point should contain but a single legal proposition and be so constructed that the trial court can answer it by a simple affirmation or negation.

Such matters as inadvertently crept into the case during the trial and are complained of here will doubtless not appear in the next trial and need not receive any special attention at this time.

The judgment of the court below is reversed and a venire facias de novo is awarded.