Cummings *v.* Pennsylvania Railroad Co.,
Appellant.

Argued May 12, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Charles M. Clement,* with him *J. Simpson Kline,* for appellant, cited: Rhodes v. R. R., 298 Pa. 101; Haskins v. R. R., 293 Pa. 537; O'Neill v. Reading Co., 296 Pa. 319; B. & O. R. R. v. Goodman, 275 U. S. 167; Craft v. R. R., 272 Pa. 499.

*H. W. Cummings,* of *Cummings & Gubin,* for appellee, cited: Ely v. Ry., 158 Pa. 233; Razzis v. Ry., 273 Pa. 550; Tiffany v. R. R., 185 Pa. 308; Newhard v. R. R., 153 Pa. 417; Siever v. Ry., 252 Pa. 1; Bickel v. R. R., 217 Pa. 456; Bush v. R. R., 232 Pa. 327.

OPINION BY MR. JUSTICE FRAZER, June 21, 1930:

Plaintiff sued to recover damages for the death of her husband who was killed by one of defendant's trains at a grade crossing in the village of Dewart, Northumberland County. The negligence charged against defendant was operating its train over the unguarded crossing at an excessive speed without giving proper warning of its approach. The trial judge submitted the questions of defendant's negligence and contributory negligence of deceased to the jury who found for plaintiff in the sum of $16,149, subsequently reduced by the court below to $11,349, which reduction was accepted by plaintiff and judgment entered on the verdict. Defendant appealed.

The view of the approaching train was obstructed by freight cars standing on an adjoining siding and the question whether deceased stopped to look and listen at a proper place before attempting to cross, and whether, under all the circumstances, defendant gave sufficient and timely warning of the train's approach, depended upon conflicting statements of witnesses and inferences to be drawn therefrom, and were for the jury. The case was submitted under a charge which is free from error with one exception which we deem of such importance as to require reversal of the judgment for reasons hereafter stated.

The trial judge affirmed a point submitted by plaintiff and made the subject of the tenth assignment of error, which is as follows: "Even though the whistle was blown and the bell rung on the engine which struck and killed the plaintiff's husband, yet if, under the particular circumstances of this case, the jury find that the public safety was not reasonably secured at the crossing

by reason of the absence of a watchman or gates, they may still find that the defendant was negligent."

This point, as drawn, permitted the jury to find defendant was negligent in failing to provide a watchman or safety gates if, in their opinion, the safety of the public was not otherwise reasonably secured. It thus permits juries, in crossing cases, to be the final judge of whether or not safety gates or watchmen should be provided. It may be that neither the trial judge nor counsel who drew the point intended to depart from the rule established in our earlier decisions permitting the absence of a watchman or safety gates to be taken into consideration, with other evidence, for the purpose of determining whether, under all the circumstances, the railroad company was negligent at the time of the accident, the point as drawn however goes a step further than any of our previous decisions and if adopted would permit a jury in all crossing accident cases to substitute its discretion for that of the directors of the railroad company and to say whether such precaution should have been adopted.

The general rule is that there is no common law duty on the part of a railroad company to place a flagman or safety gates at a crossing. This rule has not been departed from except as stated above, to the extent of permitting the absence of a flagman or gates to be considered by the jury, with other facts, in determining whether or not under all the circumstances the railroad was negligent at the time the accident happened. The question which the jury has been permitted to decide is not whether in their judgment due care required the railroad to maintain a flagman or safety gates, or whether that or some other precaution would be a suitable mode of giving notice of the approach of a train, but whether, under the circumstances shown in a given case, the railroad company exercised reasonable care and prudence in what it did and whether such neglect caused the injury complained of. This rule does not

permit a jury to decide in what manner a railroad company should perform its duty to the public at a particular point and to substitute its judgment for that of the company's proper officers, but merely permits them to pass on the question whether, under the circumstances described, taking into consideration the physical conditions of the crossing, the extent of its use by the public, the nature of the surroundings, the speed of the train, and other matters tending to show exceptional dangers incident to the particular locality, they performed their duty toward persons using the highway.

Cases relied upon by plaintiff in discussing this point do not go beyond the rule above stated. In P. & R. R. R. v. Killips, 88 Pa. 405, the jury were permitted, in determining whether defendant was negligent in view of all the circumstances, to take into consideration the fact that defendant had maintained a gateman during designated hours of the day only and after that time had permitted the crossing to remain open without gates or watchman. In Lehigh Valley R. R. v. Brandtmaier, 113 Pa. 610, the fact that there was no flagman or safety gates was held a proper matter to be considered by the jury, with other facts, in determining whether the rate of speed at which defendant operated its trains was consistent with public safety. In Seifred v. P. R. R., 206 Pa. 399, 402, the trial judge charged that, "If this crossing was not a more than ordinarily dangerous crossing, then the sounding of the bell and blowing of the whistle was sufficient notice, and the company would not be to blame for not having a watchman or flagman at that point; and if the whistle was blown and the bell was rung as the engine approached the crossing, they have done their full duty at this point, if you find in addition that it was not a dangerous crossing." In discussing the effect of this charge we there said: "In effect, the court said to the jury, if the crossing was dangerous it was negligence per se for the company not to guard it with a flagman or watchman. As suggested by coun-

sel, all railroad crossings are more or less dangerous and are so regarded. The jury therefore was told by the court that the failure to furnish a flagman or watchman at the place of the accident was negligence. The learned judge may not have intended to say this to the jury but such was clearly the effect of that part of the charge just quoted. On running its trains over a crossing, a railroad company must exercise the care required by all the circumstances, and the failure to perform this duty is negligence. It must adopt and use some means for the protection of those who may be crossing its tracks at their intersection with a public highway. But what particular means shall be used to protect the public when using the crossing with due care is left to the railroad company which operates the road, the law merely demanding and requiring reasonable care in view of all the circumstances."

To the same effect is Pennsylvania Railroad Company's Case, 215 Pa. 373, where we said (page 375): "What particular means, however, shall be employed to protect the public when using streets or highways at railroad crossings is left to the company operating the road, the law merely demanding and requiring reasonable care in view of all the circumstances. There is no common-law duty on the part of the company to station a flagman or erect gates at a crossing; but the failure of the company to do so is to be considered with other facts in every given case in determining whether the company was negligent."

Aside from the point and answer covered by the tenth assignment of error, the trial judge, in his charge (sixth assignment) instructed the jury: "The fact that a watchman was not there may be considered in connection with the other facts in the case in determining the question of defendant's negligence,—but I say to you it is under no bounden duty to maintain the flagman or watchman, but the absence of one is merely one of the circumstances to be considered in connection with all the surrounding

circumstances in the case, in determining whether or not the defendant was negligent." This was a proper statement of the law, but its effect was destroyed by the further charge: "Unless the jury should first find that it was a dangerous crossing and that the presence of a flagman at the crossing was necessary for the reasonable safety of the traveler, and it then becomes an important factor in the case."

Here the trial judge fell into the same error contained in the tenth assignment and which was condemned in Seifred v. P. R. R., supra. He permitted the jury to infer negligence from the mere absence of a flagman if they deemed the crossing a dangerous one.

The sixth and tenth assignments are sustained, the judgment is reversed, and a new trial granted.