## Tupponce v. Pennsylvania Railroad Company

*W. R. Lorry,* for plaintiff.
*Owen B. Rhoads,* for defendant.

SLOANE, J., August 29, 1947.—In this case the jury brought in a verdict for plaintiff in amount of $20,000. Defendant filed motions for judgment n. o. v. and for a new trial; the motion for judgment n. o. v. was refused and that for a new trial granted. Both sides have appealed; defendant from refusal of its motion for judgment, and plaintiff from the order granting a new trial.

On the motion for judgment n. o. v., viewing all the evidence in the light most favorable for plaintiff, the facts are:

Plaintiff was injured on June 22, 1945, while crossing over the coupling between two box cars of defendant's freight train when the train, which had been standing still, was suddenly moved. Plaintiff was a worker on Pier 98 at Oregon Avenue and the Delaware River, in Philadelphia. On that day he was leaving the pier about noon to go to lunch, along with several hundred other workers. These men all had to leave by a single gate and had to cross Delaware Avenue to get to wherever they were going. There are several railroad tracks on Delaware Avenue at that point, with the nearest set approximately six feet away from a metal fence enclosing Piers 96, 98 and 100. A line of defendant's freight trains was standing upon this nearest track obstructing the Oregon Avenue crossing, a public crossing. The line of trains was several blocks long; to plaintiff's right (as he was facing away from the pier) it curved onto Pier 96 so that plaintiff could not get around the train that way, and to the left the line extended about a block and a half or two blocks. In that direction the space between fence and train became narrower and it was filled with dunnage (broken up wood with nails). The engine of the train was to plaintiff's left. Plaintiff waited about a minute, and seeing no sign that the train was soon to be moved, proceeded to cross between two of the box cars, as many of the workers had already done and some were then engaged in doing. While plaintiff was between the two cars the train suddenly moved and his left foot was crushed, as result of which he lost four toes—all except the little toe.

Plaintiff and his witnesses testified that no bell was rung, no signal or prior warning that the train was about to move was given, and no watchman was at

the crossing to direct the men. They also said it was a customary practice for the men to go between the cars when leaving the pier for lunch, and that frequently a railroad man was there to give directions as to when it would be safe or not safe to cross. On some occasions a break was made in the train to let the men through. Plaintiff's witnesses said that on this occasion the train had been standing still for 10 or 12 minutes, blocking the crossing, prior to the time that it made the move resulting in injury to plaintiff. All this testimony must be accepted as verity on the motion for judgment.

There was sharply contradictory testimony by defendant's witnesses as to the time that the train had been standing there, and as to the bell signal being given; this testimony was oral and could not be considered on the motion for judgment n. o. v. See Mac-Donald, Admx., v. Penna. R. R. Co., 348 Pa. 558, 561-3. And the testimony on behalf of plaintiff that no bell or other warning signal was given is of a higher grade than mere "negative testimony" when it comes from witnesses in a favorable position to observe. See Williams v. Pittsburgh, 349 Pa. 430; Silfies, Admx., v. American Stores Co., 357 Pa. 176, 179.

For the purpose of considering the motion for judgment n. o. v. the evidence of defendant's negligence is amply sufficient. In fact, there is a statute providing for a penalty when a railroad company blocks up or obstructs the passage of any crossings of public streets or roads: Act of March 20, 1845, P. L. 191, sec. 1, as amended, 67 PS §452. Defendant's only chance of success on this motion depends on demonstrating that plaintiff was guilty of contributory negligence, as a matter of law. To reach such a conclusion we must come finally to, and adopt the absolute rule that where a plaintiff crosses over a car, and mischief ensues to him, he has only himself to blame. And application of

such an absolute rule would mean the refusal to consider or leave to the jury any concomitant circumstances on the question of contributory negligence.

We are not disposed to an absolute rule declaring contributory negligence whenever a plaintiff crosses between cars, and do not find any Pennsylvania case which expounds it, except perhaps by way of dictum. In the case of Rauch v. Lloyd & Hill, 31 Pa. 358, the court did say, ". . . if the plaintiff had been an adult of ordinary prudence and discretion, he would have no right of action", and on page 371, "He acted like a child, and he is not to be judged as a man"; this case was nevertheless one of a minor, six or seven years of age, and it was held the case should have gone to the jury. And other factors present in our case and not in the Rauch case are involved—the prior practice, acquiesced in by defendant, of men going between the cars, and the use of a watchman on other similar occasions.

Philadelphia, Baltimore and Wilmington R. R. Co. v. Layer, 112 Pa. 414, was another case of a minor. Recovery was allowed; at page 418 the court said:

"Whether or not an attempt on the part of an adult person to cross over or under a train obstructing the crossing of a public street, in case of injury, is negligence *per se*, or merely evidence of negligence, we are not called upon to decide. . . ."

And a minor case too was Todd v. Philadelphia and Reading Railway Co., 201 Pa. 558, 561, where it was said:

". . . and nothing more need to be said as to the second [the contention that minor plaintiff could have continued along the sidewalk where he was walking, and would not have been injured] than that it asks for the enforcement of a rule *which might be applied if an adult person*, and not a boy of ten years of age, was seeking to recover." (Italics supplied.)

In the Rauch case there is positive dictum, in the second case nondecisional dictum, in the third case, possible dictum. Since the cases all involved minors, in none of them was the expression at all necessary to the case; they were remarks "by the way", at best, a faint suggestion.

It is true that in other jurisdictions there appear to be flat statements as to plaintiffs who cross cars. For example, in Lewis v. Baltimore & Ohio R. R. Co., 38 Md., 588, 601:

"He is bound, notwithstanding such acts of negligence, to exercise proper care and prudence, and if he fails to do so, he cannot hold another responsible for an injury which may be fairly traced to his own negligence."

But the court was careful to say too, previously (p. 599):

"The question in this appeal resolves itself then into this, was the attempt on the part of the plaintiff to get on the platform of the car, *under the circumstances*, such a *glaring act of carelessness* as to amount in law to *contributory negligence?*"

And in Wherry v. Duluth, Missabe and Northern Ry. Co., 64 Minn. 415, 417:

"*On these facts* it must be declared that there was a want of ordinary care upon plaintiff's part, contributing to the injuries received, as a proximate cause thereof, without which the injuries would not have occurred. The plaintiff was guilty of contributory negligence as a matter of law. It has been repeatedly so held under like circumstances (citing cases)." (Italics supplied.)

There are a host of cases; many can be found in 12 Negligence and Compensation Cases Annotated, 985 et seq.; Fourth Decennial Digest (1926-36), Vol. 26, page 1184, Railroads, sec. 326 (2); 13 LRA (NS) 1066; 44 Am. Jur. 743, §504. The one rule to count

upon is the usual one, that it depends on the circumstances, and those circumstances and the conclusion thereof are for the jury. See Freeman v. Terry, 144 S. W. 1016 (Texas).

3 Shearman & Redfield on Negligence (revised edition, 1941) 1165-6, puts it this way:

"In Massachusetts, it is held that they must thus wait, and content themselves with an action against the company for the delay. But the true rule is, as elsewhere established, that it is not negligence for a traveler to cross by the only path left open to him, whether by climbing over a platform, or walking between two separated cars, or behind a train, so long as he takes no greater risk than a man of ordinary prudence, acting in a prudent spirit, would take. But it is negligent, when an engine is attached to a train, to climb over car bumpers or other parts of cars which no prudent man would venture upon under similar circumstances. It is unquestionably negligence of a gross degree to pass *under* cars."

We hesitate to adopt the above rule unqualifiedly. It does not seem to be accurate. For example, to approve its proposition, it cites under a footnote the Rauch case, which, as we know, is the case of a minor.

In the instant case, there is perhaps even a question of wanton negligence on the part of the railroad employes, if they started the engine with knowledge of the fact that plaintiff or other persons were between the cars; and such "reckless or wanton misconduct" would of course warrant recovery even if plaintiff were contributorily negligent. See Kasanovich, Admx., v. George et al., 348 Pa. 199, 203. Consideration of this point however is not necessary in reaching our conclusion that judgment n. o. v. be refused; since, in our opinion, contributory negligence as a matter of law has not been shown, there is no need

to determine whether plaintiff may be relieved of the consequences of such negligence.

To repeat, each case, as in most "negligence cases", must depend on its own circumstances. Each case has its own facts. And we think the circumstances of the case in hand warranted submission to the jury. It was lunch time, many men came out of this one exit and crossed the standing cars, not only this day, but other days. Defendant (its employes) knew the situation and permitted it, or at least acquiesced in it. There was no other safe way to get across, neither to the right nor to the left. With those circumstances we think it is for the jury to say whether plaintiff was reasonably prudent in crossing between standing cars. That seems to be a dictum indication in Charlton v. Baltimore & Ohio R. R. Co., 252 Pa. 107, where these words are said (p. 110) : "There was no evidence that trains at other times stood upon that crossing or that men were in the habit of crossing over cars there with the knowledge of trainmen." ( Language of lower court, affirmed by the Supreme Court.)

In the instant case, judgment n. o. v. was properly refused.

We did however grant a new trial, for these reasons:

1. The charge emphasized too strongly that if the jury found that defendant's cars obstructed the crossing for 10 or 12 minutes they would be justified in holding there was negligence.

"If, on the other hand, you find the fact to be that this obstruction by these cars was there for a period of 10 or 12 minutes, then you would be justified in saying that the railroad company was negligent in this obstruction, because you have got to remember that there were—I think one person's testimony was— there were upwards of a thousand employes who swarmed out at 12 o'clock, and that this space between the exit and entrance in that fence and the track was

full of men, and they had a right to go through, and if there was this obstruction, and the obstruction was there for that undue length of time, 10 minutes, then the railroad company was negligent . . . If . . . you find there was this obstruction for 10 minutes, you will have a right to say that the railroad company was negligent."

And again in the charge:

"But if . . . you find that the obstruction was there for such a length of time, 10 or 12 minutes, then you will have a right to say that the railroad company was negligent. Of course, so far as the minutes are concerned, it is up to you to decide, because while the testimony was 10 or 12 minutes on one side, and one and a half or two on the other side, the ultimate fact is to be decided entirely by you."

It may have been arbitrary to set up the mentioned obstruction-period as being unreasonable and therefore negligent. The trial judge was careful to point out more than once that the finding of all the facts was ultimately for the jury. However, in reading the charge as a whole there does seem to be an emphasis from which the jury may well have gotten the impression that it was their duty to determine whether defendant's train was stopped for that length of time, and if it was, to find negligence automatically, rather than to determine the period and also to determine whether such period was unreasonable and thus constituted negligence. In other words, the unreasonableness, as well as the length of the period, should have been left unmistakably to the jury's consideration.

2. We thought the verdict of $20,000 high. Of course, if excessiveness were the only basis for a new trial we could have ordered remittitur, though we hesitate to fix another figure after the jury's verdict, and might in any event have preferred that a second jury pass upon the amount should they find for plaintiff

in another trial. But this, together with the first reason, which by itself we consider sufficient, brought us to the conclusion that a new trial should be granted.

Two other portions of the charge were complained of by defendant; we do not consider however, that they constituted error.

Defendant contended there was error harmful to it in the instruction on the question of a watchman or guard:

"The question that you have to decide, is after you decide the facts: Should the railroad company have had a watchman or a signalman or a guard to say to these men that they may or may not go across? If you decide they did not have to have a man, then they were not negligent. If, on the other hand, you decide that the railroad company should have had a watchman there or a signalman or a flagman, whatever you want to call him and did not, then you would be justified in saying that the railroad company was negligent."

In support of its position defendant cites Seifred v. Penna. R. R. Co., 206 Pa. 399; Cummings v. Penna. R. R. Co., 301 Pa. 39; Haller v. Penna. R. R. Co., 306 Pa. 98. We do not believe, however, that in its context and as the facts of the case were developed, the charge constituted error. The point of the Seifred and Cummings cases is that the jury may not be the judges of whether a watchman is required at a particular crossing; that is primarily the duty of the railroad managers. Absence of a flagman or watchman is not negligence per se. But these cases involve the point whether the crossing is of such a character generally that a watchman or guard should be stationed there. The charge in the Cummings case "permitted the jury to infer negligence from the mere absence of a flagman if they deemed the crossing a dangerous one": (page 45), and "to be the final judge

of whether or not safety gates or watchmen should be provided" (page 42). There is no common-law duty on the part of a railroad company to place a flagman or safety gates at a crossing.

But the cases do not say that the question of a watchman at the time and place of the accident should not be put before the jury; in fact it is pointed out in the Cummings case (page 42) that the rule permits "the absence of a flagman or gates to be considered by the jury, with other facts, in determining whether or not under all the circumstances the railroad was negligent at the time the accident happened". See also Seifred v. Penna. R. R. Co., supra, at page 403. And that is really all that was done here; the jury was asked to consider the precise situation, not the general question of whether the crossing was a dangerous one and that it was therefore a place where a watchman was required. On page 216 of the charge, before the above quoted part, the trial judge said: "Should there have been one this day, considering the circumstances?" Furthermore, the above cited cases are not, on their facts, applicable; they were not cases of standing trains but of trains running through crossings, where the character of the crossing and the necessity generally of a watchman was raised; here the question of a watchman or guard was tied to the actual situation at the time of the accident.

There was also complaint about the following portion of the charge—it seems de minimis:

"Should there have been more than the mere ringing of the bell by way of a signal? For instance, should there have been a shout by the man in the crew who was closing the gate?"

It is argued that this submits to the jury the question of what signals should be given by a train rather than the question of whether the ones actually given were adequate. This is however just taking an isolated

excerpt from the charge, from which, as a whole, the jury undoubtedly gathered that it was to determine whether any signal at all was in fact given, and if so, whether it was adequate for the purpose of giving sufficient warning. See Cummings v. Penna. R. R. Co., 304 Pa. 219 (the same case as the one in 301 Pa. 39, after a new trial was held).

For the reasons above set forth we granted a new trial in this case. See Cone v. West Virginia Pulp & Paper Co., 330 U. S. 212; Bunn et al. v. Furstein, 153 Pa. Superior Ct. 637.