**DOSTAL v. BALTIMORE & O. R. CO.**

No. 10386.

United States Court of Appeals
Third Circuit.

Argued March 20, 1951.

Decided May 25, 1951.

Vincent M. Casey, Pittsburgh, Pa. (Casey, Power & Savage, Pittsburgh, Pa., on the brief), for appellant.

James P. McArdle, Pittsburgh, Pa., for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This is a diversity action in which plaintiff seeks to recover damages for the death of Joseph A. Dostal in a grade crossing collision between the automobile owned and operated by the decedent and the passenger train of defendant. This is the second trial of the case, the jury in the first trial having failed to agree.[1] In the second trial the jury rendered a verdict for plaintiff. Defendant's motions for judgment n. o. v. or, in the alternative, for a new trial were denied. Defendant argues on appeal that judgment n. o. v. should have been granted because plaintiff's decedent was guilty of contributory negligence as a matter of law. The contention urged upon us is that the facts of the instant case call for the application of the "incontrovertible physical facts" rule. Defendant also urges that certain alleged errors in the charge of the district judge constituted prejudicial error and render a new trial necessary.

The facts are as follows: The place of the accident was the Lyndora crossing of defendant railroad in Butler County, Pennsylvania; the time was February 20, 1946, shortly before 7 p. m., as twilight was merging into night. Immediately prior to the accident, decedent was driving his sedan in a westerly direction along Route 8, the highway between Butler and Pittsburgh. Although this highway has a generally north-south orientation, the particular stretch of Route 8 with which we are concerned runs approximately in an east-west direction. This segment of the highway is paralleled on the north by the single track of defendant railroad. Motorists on Route 8 who wish to travel in the direction of Lyndora must turn northward from Route 8 and cross the Lyndora crossing of defendant railroad. The approach to this crossing is in the form of a Y. Travelers coming from the east naturally use the eastern leg of the fork; those from the west, the western leg.[2]

The decedent, traveling in a westerly direction from Butler, turned right onto a fork of the Y, preparatory to crossing defendant's track. There is eye-witness testimony to the effect that he stopped, the front of his car being estimated as from 10 to 15 feet from the first rail of the crossing.[3] Upon proceeding across the track, decedent was hit by the train of defendant. The testimony of defendant's locomotive engineer is that the auto was hit "nearly in the rear."

1. At this point, defendant appealed to this court from a refusal of a motion to enter judgment under Rule 50 (b) of the Federal Rules of Civil Procedure, 28 U. S.C.A. The appeal was dismissed for lack of jurisdiction, 3 Cir., 1948, 170 F. 2d 116.

2. The distance from Route 8 to the crossing has been measured as 95 feet along the eastern leg of the Y and 65 feet as the crow flies. Route 8 occupies a considerably higher elevation than the crossing, there being a grade of 12½% between the highway and the crossing.

3. On cross-examination, the witness declared that the front of the car was 10 to 15 feet from the crossing. On redirect examination, the witness testified that he could not see the wheels of the car, but saw only the top of it. Whether by that statement he meant the roof of the car or the hood is uncertain.

There is compelling evidence that the headlight of the train was burning. It is admitted that the crossing was not protected by a watchman, gates, or signal lights. There is a sharp conflict in the testimony as to whether the train sounded any signal in the way of bell or whistle. Defendant railroad asserts that if the decedent had stopped at a point where plaintiff's witness testified he did stop, decedent would have had an unobstructed view to his right of over 2200 feet. Hence, even if the evidence of defendant's negligence is viewed in a light most favorable to plaintiff, defendant's contention is that decedent could not have looked and listened; for, had he exercised the standard of care imposed upon him by law, he could easily have avoided the accident. Thus, it argues, the incontrovertible physical facts necessitate a finding that the decedent was contributorily negligent as a matter of law. This is defendant's principal contention on appeal.

Defendant's version of the physical facts is based on a dual foundation. First, defendant has introduced photographs taken by its claim agent, Scofield, allegedly on the day following the accident. In addition, Scofield testified that sight views taken by him and another on the same day, at several points near the crossing, established that there was an unobstructed view of defendant's right-of-way to the right for 2260 feet. Another of defendant's witnesses, Shuler, a civil engineer, viewed the scene of the fatal crossing on May 2, 1946, approximately two and one-half months after the accident, and made a map or plan of the area. His testimony regarding sight views taken by him and another at that time is to the effect that the unobstructed view to the right was 2275 feet. Shuler's sight views, however, were taken from only two points; one was taken on Route 8 at its intersection with the east fork of the Y, the other from the middle of the crossing itself.

Plaintiff's version of the so-called incontrovertible physical facts differs radically from that of defendant. Plaintiff contends that the photographs taken by Scofield do not accurately portray the accident scene on the day of the accident, and that his sight views were erroneous. The heart of plaintiff's case is that as Dostal turned right onto a fork of the Y toward the grade crossing, his view to the right was substantially obstructed by a bank, approximately four feet high, which was covered with dry brush or foliage about two feet high. Several witnesses for plaintiff testified that at a point where a motorist would normally stop, the high bank and weeds limited the view to twenty-five or thirty feet. Hall, a civil engineer, testified for plaintiff as to sight views taken by him and another in late March or April of 1946. His measurements revealed that a motorist ten feet from the crossing would have an unobstructed view to his right of only 102 feet.[4] There is also testimony indicating possible obstructions to audibility as well. Route 8 is a heavily traveled highway. The tracks of the Bessemer and Lake Erie Railroad lie just 395 feet to the north of defendant's right-of-way, and several industrial plants are in the immediate vicinity.

The Pennsylvania cases make it clear that the incontrovertible physical facts rule has no relevancy where the testimony of witnesses is needed in order to apply the facts to the issue in the case. Cunningham v. Pennsylvania R. Co., 1945, 352 Pa. 571, 573, 574, 43 A.2d 825, 826;[5] Streilein v. Vogel, 1949, 363 Pa. 379, 383, 69 A.2d 97, 99–100. To employ the rule in

4. There is testimony to the effect that headlights of cars along Route 8 can be confused with headlights of trains. This might be another factor explaining why the decedent failed to see the train.

5. The problem involved in the Cunningham case is similar to the one in the instant case. The Supreme Court of Pennsylvania, in disapproving the lower court's application of the incontrovertible physical facts doctrine, declared: "It is apparent that the proof of the extent of plaintiff's vision was not fixed with exactness, but depended upon testimony and estimates, taken into consideration with the surrounding physical situation. For these reasons defendant, through the use of such plans and photographs, has not demonstrated a situation which is so fixed and unquestioned that we are required to disregard plaintiff's testimony." 352 Pa. 571, 574, 43 A.2d 825, 826.

the instant case where the physical facts are in dispute would seem to be an anomaly. The credibility of defendant's witness Scofield was a matter for the jury. His photographs were attacked by plaintiff as inaccurate representations of the accident scene; they, too, must be passed on by the jury. The testimony of the two civil engineers, Hall for the plaintiff and Shuler for the defendant, are in sharp contradiction. The fact that the latter made no sight view at a point where a motorist ordinarily stops before committing himself to the crossing might very well have been an important factor in leading the jury to accept plaintiff's version of the physical facts. At any rate, the issue was clearly one for the jury.

On an appeal from a refusal to enter a judgment n. o. v., we are obliged to give the appellee the benefit of every inference that could properly be drawn in his favor. Thus we must assume that the jury accepted plaintiff's version that there existed on February 20, 1946, a bank covered with brush which constituted a severe obstacle to visibility. Under such circumstances, the Pennsylvania Supreme Court has held that the doctrine of incontrovertible physical facts passes out of the case. Hisak v. Lehigh Valley Transit Co., 1948, 360 Pa. 1, 4, 59 A.2d 900, 902, and cases cited therein.

Defendant contends that the following part of the trial judge's charge constituted error: "Members of the jury, counsel for the plaintiff[6] has asked me to instruct you that there is a presumption in the law that this deceased did use the necessary degree of care to protect himself at that crossing; in other words, that he did stop, look and listen." Since plaintiff introduced evidence that the decedent did stop, defendant argues that any presumption that he stopped is eliminated from the case. We do not think the judge's instruction constituted prejudicial error.[7]

The Pennsylvania courts have stated time and again that when a person is killed in an accident, there is a presumption that the decedent used due care, which is based upon " * * * the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to one's self * * *." Morin v. Kreidt, 1933, 310 Pa. 90, 97, 164 A. 799, 800–801. More recently, the Pennsylvania courts have thoroughly analyzed the true nature of this presumption. In Watkins v. Prudential Ins. Co., 1934, 315 Pa. 497, 173 A. 644, 648, 95 A.L.R. 869, the Supreme Court of Pennsylvania incorporated into Pennsylvania law the Wigmorian approach to the concept of presumptions. A presumption, according to this view,[8] does not constitute evidence, and can never take the place of evidence. It is merely a device whereby the burden of coming forward with the evidence on a particular issue is cast upon a given party. Presumptions are, in the language of the Pennsylvania Supreme Court, merely "guideposts indicating whence proof must come".

If this analysis is applied to the presumption of due care, it becomes apparent that this presumption has little significance. Since Pennsylvania law places upon the defendant both the risk of non-persuasion and the burden of coming forward with the evidence with respect to the issue of plaintiff's contributory negligence, what is the additional legal effect of this presumption that decedent exercised due care? The Pennsylvania Supreme Court answered that question in the Watkins case when it declared by way of dictum that the presumption of a victim's due care is merely the converse of the statement that the burden

---

6. Counsel for plaintiff requested only an instruction that there was a presumption that decedent looked and listened. The instruction as given was the result of a mistaken interpretation of counsel's request.

7. Several Pennsylvania cases have declared that testimony to the effect that a decedent exercised due care results in a strengthening of the presumption. Ehrhart v. York Rys. Co., 1932, 308 Pa. 566, 570, 162 A. 810, 811; Harris v. Reading Co., 1937, 325 Pa. 296, 301, 189 A. 337, 339. Our conclusion that there has been no prejudicial error could be justified on these decisions alone.

8. 9 Wigmore on Evidence, §§ 2483–2498a (3d ed.).

356

of proof as to contributory negligence rests on the asserter of the victim's negligence. That dictum was followed in Susser v. Wiley, 1944, 350 Pa. 427, 39 A.2d 616, where the court applied it to a grade crossing accident case. In that case, the injured person had become insane shortly after the accident. The plaintiff, guardian ad litem for the injured man, argued that the presumption of due care was applicable and that the trial court erred in not so instructing the jury. The Pennsylvania Supreme Court held that even if the presumption of due care were applicable to that case, there had been no prejudicial error since there was little, if any, difference between the presumption that the victim exercised due care and the rule which imposes on the defendant the burden of proving contributory negligence. Since the trial court in that case had repeatedly told the jury that the burden of proving contributory negligence was upon the defendant, the plaintiff was held not to have been prejudiced.

The Susser case would seem to control the decision in the instant case. The instruction to the jury that there was a presumption that the decedent stopped, looked and listened, constituted merely an implied corollary to the proposition that the burden was on the defendant to establish either that the decedent did not stop, or that he did not look, or that he did not listen.

If this instruction, alleged by defendant to be erroneous, is read in context, its effect on the jury becomes clearer. Immediately after the charge as to the presumption of due care, the court told the jury: " * * * it was the duty of the deceased to use a proper degree of care and to stop, look and listen at this crossing, and in the event he did not do that then he is not allowed to recover." The total effect of these two instructions was that while plaintiff could not recover unless the decedent had stopped, looked and listened, nevertheless the burden of proving that decedent did not

exercise that amount of care was placed upon the defendant.

▮ Defendant also alleges as error the trial judge's instruction with respect to the effect to be given to the absence of gates and a watchman. We think defendant is precluded from raising this on appeal because it failed to take specific objections to the charge within the meaning of Rule 51 of the Federal Rules of Civil Procedure. A mere statement that counsel objects to the charge as to absence of gates and a watchman, with no indication as to the grounds for the objection, does not satisfy either the letter or the spirit of Rule 51. Cf. Moreau v. Pennsylvania R. Co., 3 Cir., 1948, 166 F.2d 543.

▮ Even if this assignment of error be considered on its merits, we hold that the challenged instruction is essentially in conformance with the Pennsylvania rule as laid down in Seifred v. Pennsylvania R. Co., 1903, 206 Pa. 399, 55 A. 1061 and Cummings v. Pennsylvania R. Co., 1930, 301 Pa. 39, 151 A. 590, 71 A.L.R. 1156. The net effect of the trial judge's charge, considered as a whole, was that the failure of defendant to provide a watchman and gates at the Lyndora grade crossing could be considered with other facts in determining whether, under the circumstances of this case, defendant was negligent.

▮ Defendant also alleges as error the district court's instruction with respect to proximate cause and its failure to charge that there was a duty on decedent to continue to look and listen as he proceeded over the crossing. Here again, defendant failed to meet the duty imposed upon it under Rule 51. This court is of the opinion, however, that the charge, considered as a whole, was an eminently fair one. No appellate court has ever imposed upon a trial judge a standard of dialectical perfection.[9]

For the reasons stated, the order of the district court will be affirmed.

9.  See Dallas Ry. & Terminal Co. v. Sullivan, 5 Cir., 1940, 108 F.2d 581, 584.