Henry B. SENS, Jr., Plaintiff,

v.

The BALTIMORE AND OHIO RAILROAD COMPANY, Defendant.

Civ. A. No. 11484.

United States District Court
W. D. Pennsylvania.

March 25, 1957.

---

3. Edmund Burke—"Speech on the Conciliation of America".

James P. McArdle, Pittsburgh, Pa., for plaintiff.

Vincent M. Casey, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is a claim for personal injuries resulting from an accident which occurred at a most dangerous and hazardous public crossing of The Baltimore and Ohio Railroad Company.

Upon jury trial a verdict was returned in favor of plaintiff in the amount of $129,500.

The matters before the court are twofold:

(1) Motion to set aside the verdict or for judgment notwithstanding the verdict for the reason:

(a) Plaintiff was contributorily negligent as a matter of law under the incontrovertible physical facts doctrine.

(2) Motion for new trial for the reasons:

(a) Proof adduced at trial was at variance with certain statements made by counsel at pre-trial conference.

(b) Prejudicial conduct on the part of the court in its actions toward defense counsel.

(c) Fundamental error was committed in allegedly submitting the case to the jury upon the legal thesis that jury could find negligence on the part of the defendant in not getting the train under control after discovering the plaintiff on the crossing.

(d) The court erred by charging a duty on part of defendant to maintain a public crossing with proper safeguards for the public.

(e) The verdict was based upon false testimony.

(f) The verdict was excessive.

### Motion for Judgment N.O.V.

Defendant does not contest that there is evidence of negligence on its part in maintaining an unusually hazardous and dangerous crossing, but contends that plaintiff was guilty of contributory negligence as a matter of law under the application of the incontrovertible physical facts doctrine.

Defendant seeks to bring the instant case within the indisputable physical fact doctrine on the basis of the testimony of a civil engineer who made certain measurements at the request of the claim department of the defendant. These measurements purported to indicate the range of visibility existing to the east at various points north of the first rail. It is plaintiff's contention that these measurements are not incontrovertible physical facts, for the simple reason that they were not made under identical conditions as existed at the time of the accident.

But be that as it may, it is undisputed that the crossing was a "blind" crossing. The numerous photographic exhibits introduced by both sides demonstrated that the plaintiff's view was obstructed by the abutment of the bridge and several telephone poles on his left, and was further obstructed by a sudden curve of the tracks to the east of the crossing. The jury was taken to a view of the crossing and had ample opportunity to observe the condition as it actually existed.

The tenuousness and spurious nature of the attempt to invoke the indisputable physical fact doctrine is most clearly brought into focus by the fact that the track about which the accident evolves curves sharply to the east, with the result that an approaching train is hidden beyond the curve, so that the speed at which the train approaches is a vital factor in determining visibility. The extent of said speed had not been developed with any degree of positiveness.

I am satisfied that where variable circumstances exist, including the speculative equation of objects in motion, and giving to the defendant the benefit of every inference that could properly be drawn in his favor, the doctrine of incontrovertible physical facts passes out of the case. Dostal v. Baltimore & O. R. Co., 3 Cir., 189 F.2d 352.

After viewing the evidence and all inferences reasonably to be drawn therefrom in a light most favorable to the plaintiff, it is my judgment that as a matter of law, under all the evidence a basis exists for which the law affords relief to the plaintiff. I, therefore, am unable to conclude as a matter of law that the plaintiff was guilty of contributory negligence.

### Motion for New Trial

(a) Defendant contends that it should be granted a new trial because the proof adduced at trial was at variance with certain statements of counsel made in connection with pre-trial conference.

Neither plaintiff's trial counsel nor plaintiff was present at pre-trial conference. Plaintiff was represented by an associate of his trial counsel. During the course of the conference, plaintiff's associate counsel gave a résumé of the factual background of the accident which indicated that the plaintiff made only one stop before committing himself to the crossing. At the trial, the plaintiff testified that he actually made two separate

and distinct stops before moving his vehicle onto the crossing. Counsel for the defendant immediately moved that the testimony concerning the second stop be stricken from the record on the basis that it was at variance with the statements made by plaintiff's counsel at the pre-trial conference.

 In this connection, I desire to preface my remarks with the statement I have steadfastly adhered to the inviolability of the pre-trial conference, and that I have always believed that a strict adherence to the case, as it is presented at pre-trial, is essential to the expeditious administration of justice. To now eliminate the possibility of mistaken or inaccurate information from being presented at pre-trial, I have directed that actual trial counsel together with his client must appear at pre-trial conference, and any change or deviation from representations at pre-trial can only be made by petition to the court with appropriate notice to adversary counsel.

Confronted with the variance in plaintiff's testimony from associate counsel's representation as to the number of stops plaintiff made before committing himself to the crossing, the court offered to permit defense counsel a full week's recess at the conclusion of plaintiff's case, in order to meet the variance in proof. The court permitted counsel for the defendant to read certain portions of the pre-trial record to the jury as well as a letter addressed to defense counsel, which was written by plaintiff's associate counsel. Counsel for the defendant was permitted to argue the credibility of the plaintiff and his counsel to the jury on the basis of the variance in the pre-trial and the proof.

At the conclusion of the plaintiff's case, the court renewed its offer to defense counsel an opportunity for such additional time as defendant might need to meet the variance.[1]

Considering that the court advised the jury of the significance and nature of pre-trial, and that the statements of associate counsel both at pre-trial and through written communication to defendant could be considered by the jury in evaluating the credibility of plaintiff's testimony, and further considering that the court allowed defendant ample opportunity to conduct further investigation to secure any additional information which might be needed to rebut the variance in plaintiff's position, I do not believe that defendant suffered any material prejudice. Defense counsel at argument stated that he was perfectly satisfied with the opportunity afforded him to meet the variance, and, in fact, failed to request the withdrawal of a juror during trial. Nor could he state whether he would, in any way change the defense as presented, were the case retried. I must conclude that defendant's contention is without merit.

 (b) Defendant contends that the court's action toward defendant's counsel during trial was prejudicial to defendant's cause because on two occasions the court left the bench under circumstances which constituted an affront to defendant's counsel.

The court as a matter of general practice has pursued the policy of leaving the bench when one counsel or the other, by reason of uncontrollable emotion or in the zeal of his advocacy, fails to abide by the elementary rules of courtroom decorum and courtesy. In a case as prolonged and hard fought as the instant proceeding, the record will disclose reprimands and cautionary remarks directed at both of the able counsel. I am satisfied that, viewing the proceeding as a whole, defendant counsel was afforded every courtesy and fair treatment consistent with equal justice under the law.

---

1. At page 389 of the Notes of Testimony, the Court said:
 "The Court: Do you want additional time to complete any investigation you feel you should make?

 "Mr. Casey: No.
 "The Court: You are ready to proceed tomorrow morning?
 "Mr. Casey: Yes."

■ (c) Defendant urges that the court committed fundamental error in allegedly submitting the case to the jury upon the basis that they could find negligence on the part of defendant in not getting the train under control after discovering plaintiff on the tracks.[2]

A careful reading of the court's charge will disclose that the court merely instructed the jury that the defendant's actions after it discovered plaintiff on its tracks, if such discovery had been made in the light of the evidence submitted, was a factor to be considered together with all the other evidence, in the determination of negligence.

(d) Initially, defendant contended that the fact that the court charged that defendant had a duty to maintain a public crossing in a reasonably safe condition constituted reversible error.

In this connection, the charge was premised upon Pennsylvania Statute enacted in 1837 which applied to the Pittsburgh and Connellsville Railroad Company of which the defendant corporation admittedly is its successor. At time of argument, defendant counsel was referred to said statute [3] and withdrew objection to this phase of the charge.

■ (e) Defendant's argument that a new trial should be granted where the verdict is based on false testimony merely repeats the proposition of the variance between the representations of associate counsel at pre-trial and the testimony of plaintiff at trial.

The variance between the pre-trial and the proof was fully explained to the jury, and defense counsel was given permission to comment thereon in his closing address to an unlimited degree. He was further given the opportunity to cross-examine the attorney whose statements were in question.

Upon careful scrutiny of testimony elicited from plaintiff's witnesses, I am satisfied that it is consistent, coherent and logically sound, and indeed, creates such inferences from which the jury could have reasonably concluded the negligent conduct of defendant and freedom from contributory negligence of the plaintiff. To summarily expunge this

---

2. The court charged as follows:

"Now in the event a vehicle is stalled upon the railroad track at a public crossing, and the engineer of the train has knowledge of the stop and has ample time to do something about it, it would have been the duty of the engineer not only to have slackened his speed but, if necessary, to avoid the accident, to have stopped his train.

"It is for you to say under what circumstances this truck was stalled on the track, if it was stalled. It is for you to say whether the truck was stalled on the track. It is for you to say whether or not the engineer under all the circumstances saw the truck stalled. It is for you to say whether or not adequate and timely notice was given of the approach of the train, and it is for you to say whether or not this truck was stalled there within such a sufficient length of time for the engineer to have seen it and to have stopped the train."

3. "To incorporate the Pittsburgh and Connellsville Railroad Company, Acts of 1837, P.L. 185, Section 11.

"The said railroad shall be so constructed by the said company, as not to obstruct the free use and passage of any public road or roads that may cross or enter the same, being laid out, or hereafter to be laid out, and in all places where the said railroad may cross, or in any way interfere with any public road, it shall be the duty of the company to make, or cause to be made, a good and sufficient bridge, causeway or causeways, to enable all persons passing or traveling such public road, to cross, or pass over or under the said railway, which bridge, causeway or causeways, shall be made and maintained by the said company, and if the said company shall refuse or neglect to make such bridge, causeway or causeways, or when made to keep the same in good repair, they shall be liable to pay a penalty of ten dollars for every day the same shall be neglected or refused to be made or repaired, to be recovered by the supervisors of the township, or the officers of any incorporated company, with costs, for the use of the township or company, as debts of like amount are by law recoverable, and shall moreover, be liable to an action or actions, at the suit of any person who may be aggrieved thereby, and the service of process upon any officer of said company, shall be as good and available in law, as if served upon the president thereof."

testimony, and substitute the personal opinion of the court, would do violence to the processes and purport of the jury trial.

 The choice of conflicting versions of the way the accident happened, the decision as to which witness is telling the truth and the inferences to be drawn from the uncontroverted facts and the controverted facts are questions for the jury. If there is a reasonable basis in the record for concluding that it was negligence of the defendant which caused the injury, and freedom from contributory negligence on the part of the plaintiff, it would be an invasion of the jury's function for the court to draw contrary inferences or to conclude that a different conclusion would be more reasonable. Thomas v. Conemaugh & Black Lick R. Co., 3 Cir., 234 F.2d 429.

■ (f) Counsel for defendant contends that the verdict was contrary to the evidence in that it was excessive. The extent of trauma experienced by plaintiff is glaringly illustrated by the fact police authorities investigated the case as a fatality. Beside a fractured skull and brain damage with residuals of headaches and dizziness, plaintiff sustained fracture of the right arm, and compound comminuted fractures of the right tibia and fibula. In spite of the insertion of an intramedullary wire or nail down the entire lower portion of the leg, and attempted bone grafts from other portions of the body, no union has been obtained, and plaintiff is required to employ crutches for support. The tibia has developed osteomyelitis accompanied by constant drainage and throwing off of dead tissue. Additional surgery is indicated with the possibility of ultimate amputation.

Plaintiff had incurred medical expenses in the amount of $8,554.89 to date of trial with anticipated additional bills for $2,033.50. He had lost $13,395.24 in wages to date of trial. Recognizing that plaintiff had a life expectancy of 40.6 years, being permanently and totally disabled, experiencing a loss in wages of approximately $4,300 per year, and having

endured excruciating pain and surgery of a most gruesome and pathetic nature with a bleak and guarded prognosis, it is my considered judgment that an award of $129,500 is reasonable and consistent with the evidence adduced at trial.

Upon most thorough review and recapitulation of all the credible evidence, I am convinced that the quantum of proof is such as to sustain the verdict of the jury both as to liability and damages.

Upon re-examination of the whole record and the charge of the court, I am satisfied the award was consistent with the law and facts.

Motion to set aside the verdict or for judgment notwithstanding the verdict, and/or new trial will be refused.

An appropriate order is entered.